CYNTHIA M. RING

V.

JAMES S. POELMAN

Record No. 900247

November 9, 1990

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, Hassell, JJ.,
and Poff, Senior Justice

*C. Richard Cranwell (Patrick S. Shiel; Cranwell & Moore*, on briefs), for appellant.

*Eric H. Ferguson (Ralph B. Rhodes; Hutcherson & Rhodes*, on brief), for appellee John Doe.

*Richard D. Lucas (Frank K. Friedman; Woods, Rogers & Hazlegrove,* on brief), for appellee James S. Poelman.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

This is a plaintiff's appeal from a judgment for the defendants in a case growing out of an automobile collision. We must determine, first, whether the trial court erred in granting an uninsured motorist, John Doe, summary judgment and, second, whether the trial court erred in granting an instruction on contributory negligence.

The transcript of evidence at trial discloses no dispute in the facts relevant to the issues on appeal. The collision occurred August 5, 1987 on Hershberger Road near its intersection with Ferncliff Avenue in the city of Roanoke. At that time, Hershberger Road contained three westbound lanes. The right lane was closed to traffic by construction barricades. The middle lane carried traffic through the signal light at the intersection. As depicted by the investigating officer's diagram, a third lane accommodated traffic turning left.

With her daughter as a passenger, Cynthia M. Ring was driving in the left turn lane at a distance of "two to four car lengths" behind traffic moving ahead of her. Other traffic in her lane was stopped at the traffic signal. Ring testified that her speed was 25 miles per hour or less.

James S. Poelman was preparing to leave a parking lot located approximately 150 feet east of the intersection and on the north side of Hershberger Road, cross the three westbound lanes, turn left, and travel east on Hershberger Road. Traffic in the middle westbound lane was stopped in a line behind the traffic signal.

One of the motorists in the middle lane, identified at trial as John Doe, stopped his pickup truck at a point that left an opening in the line of traffic opposite Poelman's car. Doe waved his hand in "a come-on manner," a gesture Poelman interpreted as meaning that Doe "was not going to pull out in front of me." Poelman looked in both directions, saw no traffic moving east or west on Hershberger Road, drove across the right westbound lane, and "hesitated" in the middle lane in front of Doe. Poelman's view to the east was "totally blocked" by Doe's truck, so he proceeded "very slowly" and "very slightly" into the left turn lane. Poelman testified that Ring's car "appeared" and that "[t]he appearance and the impact were at about the same point."

Ring testified that she "did not see [Poelman's] car" because "[t]here was no way that you could see the car coming out." "All of a sudden," she said, "the car was there in front of us, and we just crashed into each other." Her daughter's testimony was generally the same.

The officer who investigated the collision testified that the front of Poelman's car had struck the right front fender of Ring's car at a point in the left turn lane, that the damage "wasn't extensive," that neither vehicle had been moved by the impact, and that he had found no skidmarks approaching the point of impact.

Ring filed an amended motion for judgment against Poelman and Doe, claiming $225,000 in damages on account of personal injuries sustained in the collision. On November 2, 1989, the trial court granted Doe's motion to strike the evidence against him. The trial court granted instructions on primary negligence submitted by Ring and, over Ring's objection, an instruction on contributory negligence. The jury returned its verdict for Poelman, and the trial court entered final judgment for Poelman and Doe on November 27, 1989. We awarded Ring an appeal from that judgment.

Ring argues on appeal that "there was sufficient evidence of John Doe's negligence to create a jury issue" and that there was insufficient evidence to support a jury instruction on contributory negligence. We consider first whether the trial court erred in granting John Doe summary judgment.

John Doe relies upon *Nolde Bros.* v. *Wray*, 221 Va. 25, 266 S.E.2d 882 (1980). In that case, we were required to decide, as a question of first impression, whether a motorist was guilty of actionable negligence when he stopped and signalled another motorist to move in front of him. We acknowledged with approval the principle articulated by Justice Cardozo in *Glanzer* v. *Shepard*, 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922), that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *See also Cofield* v. *Nuckles*, 239 Va. 186, 192, 387 S.E.2d 493, 496 (1990). Explicating that principle, we announced the rule that "a jury question concerning a driver's negligence in giving such a signal is not presented where the signal could not reasonably have been interpreted as a signal to proceed across lanes of oncoming traffic." 221 Va. at 28, 266 S.E.2d at 884.

Applying that rule and reversing a judgment for the plaintiff, we held that the plaintiff could not reasonably have made such an interpretation because he "could see that . . . [the defendant motorist] was not in a position to determine whether [those] traffic lanes . . . were free of vehicles." *Id.* at 29, 266 S.E.2d at 884. We agree with Ring that, in that factual particular, *Nolde Bros.* is distinguishable from the case at bar. John Doe was so positioned that the jury reasonably could find that he could have and should have seen the danger of traffic approaching from the rear in the left turn lane. Based upon that finding, the jury could have concluded that Poelman, seeing John Doe in such a

position, reasonably could have interpreted the "come-on" gesture as a signal to proceed into the left turn lane and, hence, that John Doe was guilty of negligence.

■ As noted by the trial court in sustaining the motion to strike, however, "[o]n five occasions [Poelman] stated that he was not relying on that hand signal to indicate that he could enter Mrs. Ring's lane of traffic; that the signal simply indicated to him that John Doe was going to yield the right-of-way to him." Consequently, the record shows that John Doe's conduct, whether negligent or not, was not the proximate cause of the collision, and we will uphold the trial court's decision to grant John Doe summary judgment. *See Kemp* v. *Armstrong*, 40 Md. App. 542, 548-49, 392 A.2d 1161, 1164-65 (1978) (cited in *Nolde Bros.*); *see also Dace* v. *Gilbert*, 96 Ill. App.3d 199, 201, 421 N.E.2d 377, 378 (1981); *Gamet* v. *Jenks*, 38 Mich. App. 719, 725, 197 N.W.2d 160, 164 (1972).

We consider now Ring's contention that "no evidence supports the conclusion that [she] was contributorily negligent" and that the trial court erred by granting a jury instruction on that subject.

■ "[B]efore either party is entitled to an instruction on negligence or contributory negligence, as the case may be, there must be more than a scintilla of evidence introduced on the subject." *Yeary* v. *Holbrook*, 171 Va. 266, 287-88, 198 S.E. 441, 451 (1938). In defense of the jury instruction, Poelman argues that the evidence is sufficient to support findings of several species of contributory negligence.

First, he says that the jury could have found that Ring's speed was excessive under the circumstances obtaining. Her testimony at trial, however, was that she was travelling at 25 m.p.h. or less. That was 10 m.p.h. below the prevailing speed limit. Moreover, the evidence that property damage was mimimal and that there was no movement following impact tends to show that both vehicles were travelling at very low speeds.

Next, Poelman says that the evidence shows that Ring failed to keep a proper lookout for traffic entering her lane of travel.[1] Yet,

---

[1] Ring contends that the trial court erred by refusing an instruction which told the jury that "a driver who is looking straight ahead is keeping a proper lookout when he has a clear view of the way over which he is travelling by looking ahead." We reject this contention. The instruction Ring offered paraphrases out of context certain language found in *Bailey* v. *Fore*, 163 Va. 611, 618, 177 S.E. 100, 103 (1934). In *Russell, Administratrix v. Hammond*, 200 Va. 600, 605, 106 S.E.2d 626, 631 (1959) (citations omitted), we said: "A

Poelman testified that the field of vision between his car and cars approaching in the left turn lane was "totally blocked," and Poelman and Ring both testified that visual contact and physical impact were almost simultaneous. The lack of skidmarks reinforces that testimony.

Finally, Poelman argues that the jury could have found from the evidence that Ring was negligent in failing to stop or take evasive action after she saw or should have seen Poelman enter her lane of travel. Poelman's argument presupposes evidence of a lack of opportunity resulting from excessive speed, a negligent lookout, or both; this argument fails for want of its predicate.

We agree with Ring that the record is devoid of evidence that she was guilty of negligence which proximately contributed to the collision, and we hold that the trial court erred by granting a contributory negligence instruction. Because we cannot determine from the record whether the jury based its verdict on a finding that Poelman was free of actionable negligence[2] or on a finding that Ring was guilty of contributory negligence, we cannot say that the error was harmless. Accordingly, we will affirm the judgment as to Doe. As to Poelman, we will reverse the judgment and remand the case for a new trial consistent with the views expressed in this opinion.

---

driver who only looks ahead, oblivious to conditions behind and beside him which should affect his driving, is not keeping a proper lookout." This is the law in Virginia, and the holding in *Bailey* is fully consistent therewith. If, upon retrial, Ring offers the same instruction, it should again be refused.

[2] Ring insists that "[i]t is indisputable that Mr. Poelman was negligent" and contends on appeal that the trial court should have found Poelman negligent as a matter of law. She asks us to "remand this case for a new trial solely on the issue of damages with respect to Mr. Poelman." We decline to do so.

In effect, Ring moves this Court for summary judgment on the issue of Poelman's liability. The record shows that Ring made no such motion at the close of the evidence, that she drafted jury instructions on primary negligence, and that the issue as defined in those instructions was submitted to the jury. Ring's pre-verdict position was that Poelman's negligence was an issue of fact for the jury. Her position post-verdict was, and the position she assumes in this Court, is that Poelman's negligence is a question of law. "In Virginia, we have . . . approved the general rule that a party is forbidden to assume successive positions in the course of a suit . . . which are inconsistent with each other, or mutually contradictory. A litigant is estopped from taking a position which is inconsistent with one previously assumed . . . ." *Rohanna* v. *Vazzana*, 196 Va. 549, 553, 84 S.E.2d 440, 442 (1954) (quoting from *Burch* v. *Grace Street Bldg. Corp.*, 168 Va. 329, 340, 191 S.E. 672, 677 (1937)); *accord Fisher* v. *Commonwealth*, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988); *Leech* v. *Beasley*, 203 Va. 955, 962, 128 S.E.2d 293, 297 (1962).

*Affirmed in part,*
*reversed in part,*
*and remanded.*

SENIOR JUSTICE POFF, with whom JUSTICE COMPTON joins, concurring in part and dissenting in part.

I subscribe to the majority's opinion in all respects save one. I dissent from the holding that the evidence was insufficient to raise a jury question on contributory negligence.

The majority reaches its decision as a matter of law. Contributory negligence is a question of law only when "reasonable minds could not differ". *Artrip* v. *E.E. Berry Equipment Company*, 240 Va. 354, 358, 397 S.E.2d 821, 823 (this day decided). Whether a plaintiff is guilty of a negligent act or omission that proximately contributed to the injury of which he complains is, definitionally, a question of fact. As a rule of general application in Virginia, juries decide such questions. A question of fact may arise from express contradictions in the testimonial evidence or from any diversity of inferences that reasonable minds might draw from the evidence, testimonial and physical, considered as a whole.

Although not necessarily so, the jury in this case may have rested its verdict on a finding of contributory negligence as defined in the instruction given over Ring's objection. This Court must assume that it did when considering whether the evidence was sufficient to support a jury instruction on contributory negligence. Consequently, we view the evidence in the light most favorable to the parties to whom the jury awarded its verdict. In my view, the evidence of contributory negligence in this case was substantially "more than a scintilla of evidence introduced on the subject", *Yeary* v. *Holbrook*, 171 Va. 266, 287-88, 198 S.E. 441, 451 (1938).

This Court recently upheld a trial court's refusal to find a plaintiff guilty of contributory negligence as a matter of law. In *Cofield* v. *Nuckles*, 239 Va. 186, 387 S.E.2d 493 (1990), Nuckles, a pedestrian, attempted to cross a four-lane street. After crossing two lanes behind traffic stopped at an intersection, Nuckles entered the third lane in front of a van in response to the driver's hand signal to proceed. When Nuckles entered the fourth lane, he was struck by a vehicle driven by Cofield.

In that case, as here, we held that the driver who made the signal was not liable to the plaintiff. Moreover, in *Cofield* we held that the primary negligence of the defendant and the contributory negligence of the plaintiff were questions of fact for the jury and we remanded the case for a new trial on those issues. *Id.* at 194; 387 S.E.2d at 498. I find no legally relevant fact which distinguishes *Cofield* from this case; the principles applied there should be applied here.

As in *Cofield*, the evidence and the inferences it raises make contributory negligence a jury issue in this case. First, the evidence of Ring's speed was conflicting. The investigating officer testified that Ring had told him at the scene of the collision that her speed was "seven miles-per-hour." At trial, Ring estimated her speed at "about 15 to 25 miles-an-hour". Considering the change in Ring's story, the jury reasonably could have inferred that she knew when she was confronted by the officer that she had been driving too fast under the circumstances obtaining. The evidence was that Ring was travelling downgrade on a familiar road, one partially blocked by construction barricades, and that she was a very short distance behind traffic in her lane as she approached an intersection with vehicles backed up in two lanes behind a red traffic light. Given such circumstances, the jury could have decided that Ring's speed was an act of negligence.

Second, the jury was entitled to consider whether Ring kept a proper lookout. From the investigating officer's testimony and his diagram of the accident scene the jury reasonably could have found that the opening in traffic to Ring's right and the right front fender of Poelman's car both were visible to Ring before the impact. The jury could have believed that if, as Ring testified, she did not see Poelman's car in time to avoid the accident, it was because she was simply inattentive or because her speed required her to focus upon the cars ahead of her in the left turn lane. Having found Ring guilty of excessive speed, improper lookout, either or both, the jury was fully entitled to conclude that such negligence was a proximate cause of the accident.

Obviously, the majority takes the view that the jury should have reached the opposite conclusion. And I confess that, had I been a member of the jury that weighed this evidence, I might have done so. But "[c]ourts are not free to disturb verdicts merely because the jury could have drawn different inferences or conclusions or because the judge may feel that another result might have been

more reasonable." *Alvey* v. *Butchkavitz*, 196 Va. 447, 456-57, 84 S.E.2d 535, 541 (1954). "[A] jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate." *Tidewater-Raymond-Kiewit* v. *Duke*, 210 Va. 143, 151, 169 S.E.2d 585, 591 (1969) (quoting *Offshore Co.* v. *Robison*, 266 F.2d 769, 777 (5th Cir. 1959)).

The test for determining whether a particular issue is a question of fact is whether reasonable minds could differ. I believe this evidence fully satisfies that test, and I would affirm the trial court's judgment confirming the jury's verdict.